*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* C. A. GRAY, Minor

UNPUBLISHED
September 21, 2023

No. 364850
Wayne Circuit Court
Family Division
LC No. 2018-000359-NA

Before: GADOLA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Respondent-mother, T. Gray, appeals as of right the trial court's order terminating her parental rights to the minor child, CAG, under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). Because the trial court did not clearly err when it found that clear and convincing evidence supported the statutory grounds for termination and that termination of respondent's parental rights was in the child's best interests, we affirm.

## I. BACKGROUND

Respondent has three children: DG, IG, and CAG. The trial court terminated respondent's parental rights to CAG, whose father was unknown, but it declined to terminate her parental rights to DG and IG. The court found that termination of respondent's parental rights to DG and IG was not in the best interests of those children because they were in the custody of their legal father, R. Harris, who could ensure their safety should they have contact with respondent. Accordingly, only respondent's parental rights to CAG are at issue in this appeal.

At the time of CAG's birth in 2017, respondent and the child both tested positive for opiates. CAG experienced severe withdrawal symptoms that necessitated her admission to the hospital neonatal intensive care unit. Initially, Children's Protective Services (CPS) offered respondent services to prevent court intervention. However, when respondent did not cooperate with these efforts, petitioner, the Department of Health and Human Services (DHHS), petitioned the court to take temporary custody of all three children and remove them from respondent's care. After respondent entered a plea of admission, the court found statutory grounds to assume jurisdiction over all three children.

-1-

Thereafter, respondent was offered a multitude of services, but she failed to benefit from the treatment plan. Consequently, in February 2022, DHHS petitioned the court to terminate respondent's parental rights to all three children. After several hearings held between June 2022 and November 2022, the court concluded that statutory grounds to terminate respondent's parental rights to all three children were established by clear and convincing evidence. Thereafter, following a best-interest hearing, the court found that termination of respondent's parental rights to CAG was in that child's best interests, but it concluded that because DG and IG were in the custody of their legal father, it would not be in their best interests to terminate respondent's parental rights. Respondent now appeals the termination of her parental rights to CAG.

## II. ANALYSIS

### A. STATUTORY GROUNDS

Respondent challenges the trial court's finding that statutory grounds for termination were established by clear and convincing evidence. We find no error in this regard.

In order to terminate parental rights, the trial court must find that at least one of the statutory grounds for termination has been established by clear and convincing evidence. *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). This Court reviews the trial court's findings under the clearly erroneous standard. MCR 3.977(K). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been committed. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

The trial court terminated respondent's parental rights to CAG under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j), which permit termination of parental rights under the following circumstances:

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable

-2-

expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The trial court did not clearly err when it terminated respondent's parental rights under these grounds.

The evidence established that respondent's history with protective services dated back to 2011. Even before CAG's birth, respondent was offered preventative services to address her substance abuse issues, parenting skills, and housing instability. Respondent clearly did not benefit from these voluntary services because, in 2017, CAG was born testing positive for opiates; specifically, hydrocodone. The child experienced withdrawal symptoms that required her to be treated and monitored for several days in a hospital neonatal intensive care unit. Thereafter, respondent was given another chance to address her substance abuse. Between November 2017 and March 2018, CPS again offered respondent services to help her overcome her addiction. When she did not cooperate with these efforts, DHHS sought court intervention.

In March 2018, respondent entered a plea admitting that she used opiates for which she did not have a prescription while pregnant with CAG. Respondent also admitted to having limited prenatal care and that her substance abuse placed her children at risk of harm. On the basis of respondent's admissions, the court took jurisdiction over respondent's children and respondent was then given an extraordinary amount of time to participate in services designed to address her substance abuse issues, parenting skills, mental health concerns, and housing insecurity. After respondent failed to make sufficient progress in addressing these barriers to reunification, DHHS filed a supplemental petition seeking termination of respondent's parental rights.

During review hearings held between 2018 and 2022, and at the 2022 termination hearing, DHHS presented evidence that respondent did not substantially comply with or benefit from her treatment plan. The evidence also clearly and convincingly established that there was no reasonable likelihood that respondent would be in a position to safely and appropriately parent her children within a reasonable time.

The evidence clearly and convincingly demonstrated that respondent had not overcome the most significant barrier to reunification: her substance abuse issues. There was evidence that respondent's addiction issues were long standing. Indeed, respondent's substance abuse was a factor that precipitated CPS involvement with the family in 2011. Then, after this case was initiated in 2018, respondent was offered a multitude of services to address this barrier to reunification, including substance abuse therapy and random drug screens. Although respondent regularly attended counseling, her participation in drug testing—the best method by which to ascertain whether respondent was leading a drug-free lifestyle—was abysmal. During the four years that CAG remained in foster care, respondent was required to submit to approximately 200 random drug screens, but complied only 30 times. Respondent's near wholesale failure to

-3-

participate in this essential aspect of her court-ordered treatment plan made it difficult, if not impossible, to assess whether she was making any progress with her substance abuse issues.

Respondent asserted below that she did not comply with the required random weekly drug screens because she lacked transportation to the testing facility. However, the caseworker testified that respondent originally indicated that she had adequate transportation. Respondent even testified that she had friends and family who helped her with her transportation needs. Further, had respondent cooperated with the parent-partner program, she would have had assistance with transportation. In addition, there was evidence that the caseworker provided respondent with bus tickets. When respondent indicated that she did not understand the bus system, the caseworker walked her through the routes. Further, when respondent moved to her uncle's apartment, she was within five to ten minutes from the agency. At that time, the caseworker offered respondent the opportunity to submit random screens at the agency. Even then, respondent did not comply. Finally, when respondent appeared by Zoom for the June 2022 termination hearing, she was actually driving a car. On this record, the trial court reasonably could find that respondent's assertion that the lack of transportation was an impediment to complying with the requirement of random drug screening simply was not credible.

Respondent also represented that she was submitting to drug screening at the facilities where she attended substance abuse therapy. It appears undisputed that these screens were only positive for substances for which respondent had a valid prescription, specifically Suboxone, an opioid used to treat opioid dependency. However, these screens were not random. Because respondent knew when she would be tested, the results carried little weight with the trial court.

Moreover, despite respondent's claim that she had been "clean" since March 2018, there was evidence that she participated in at least four outpatient substance abuse programs during the pendency of this case. The caseworker noted that respondent had never been terminated from a program for testing positive, but she moved around from program to program frequently. Respondent's behavior suggested that she was attempting to evade detection. Respondent's actions in the summer of 2020 are also noteworthy. During that time period, DHHS was on the verge of filing a supplemental permanent-custody petition. However, on August 13, 2020, respondent, on her own accord, entered a 29-day inpatient substance abuse program. During the August 26, 2020 review hearing, the caseworker testified that a supplemental petition was not imminent because of respondent's apparent progress. The court even commended respondent on her decision to pursue inpatient treatment. At the next review hearing, however, the caseworker reported that respondent did not complete the 29-day program. Respondent's actions suggested that she was motivated to participate in services only when it served her purposes. In any event, her behavior belies any suggestion that she was truly committed to living a drug-free lifestyle. The trial court properly could find that, at the time of termination, there was no credible evidence that respondent had overcome her addiction. Accordingly, the trial court did not clearly err when it found that respondent's substance abuse continued to be a barrier to reunification.

Although respondent completed a parenting education course early on, and she regularly participated in individual therapy, there was little evidence that she benefited from these services. Respondent never demonstrated that she was willing to put her children's needs first or act in their best interests. The most glaring evidence to support this conclusion is testimony that respondent attended only 50% of her parenting time opportunities. Again, respondent asserted that she lacked

transportation to attend visits with her children. However, this excuse lacked credibility considering the extensive testimony that respondent also did not consistently attend the virtual parenting time sessions that were initially mandated by the COVID-19 pandemic restrictions. In this regard, well after in-person parenting time resumed, respondent continued to insist that visits remain virtual, despite that her older children were asking for in-person visits with respondent. Even when respondent finally agreed to attend in-person parenting time with CAG, she would only agree to telephone calls and Zoom sessions with CAG's older half-siblings. More significantly, during the six months before the court terminated respondent's parental rights, respondent did not visit CAG at all. Respondent explained that she simply did not want to deal with the caseworkers and felt that they were biased against her. Finally, there was testimony that respondent ended her last visit with CAG an hour early after she became upset over the child's use of her cell phone to play a game. Respondent's actions throughout the entire four years CAG remained in foster care were not even remotely suggestive of a parent committed to her child.

Respondent was also required to obtain and maintain suitable housing. The evidence supports the trial court's finding that respondent did not rectify this component of her treatment plan. At the time of termination, respondent was sharing an apartment with a relative. The home was assessed and respondent was informed in January 2022 that it was not suitable for her children. Respondent and the other occupant of the home failed to provide the necessary documentation to demonstrate that the housing was stable and that it would be appropriate for the other occupant of the home to be around respondent's children. The caseworker reviewed with respondent the home's deficiencies. Approximately two weeks before the termination hearing, respondent made a token effort by acquiring beds and a medication lockbox, but these acquisitions did not correct all the deficiencies. Further, this was the only time since January 2022 that respondent updated the caseworker regarding any progress with the home. On this record, there was clear and convincing evidence that respondent did not possess a suitable home for her children.

The foregoing evidence clearly and convincingly demonstrated that, at the time of termination, the conditions that led to the adjudication, and other conditions that arose thereafter, continued to exist. Further, the record clearly established that the obstacles to reunification would not be removed within a reasonable time. Respondent was given more than four years to make meaningful changes in her life, but she was unwilling or unable to do so. There was no evidence that if respondent were allowed additional time, the end result would be any different. Consequently, there was clear and convincing evidence from which the court could conclude that the conditions that led to the adjudication would not be rectified within a reasonable time.

Termination of parental rights under § 19b(3)(c)(*i*) is warranted when "the totality of the evidence amply supports" a finding that the parent has not achieved "any meaningful change" in the conditions that led to the trial court assuming jurisdiction of the child. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). DHHS met this evidentiary burden by clear and convincing evidence. Accordingly, the trial court did not clearly err when it found clear and convincing evidence to terminate respondent's parental rights under §§ 19b(3)(c)(*i*) and (c)(*ii*).

Considering the same evidentiary record, the court also did not clearly err when it found clear and convincing evidence to terminate respondent's parental rights under §§ 19b(3)(g) and (j). "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710;

846 NW2d 61 (2014). "Similarly, a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *Id*. at 711.

## B. BEST INTERESTS

Respondent also challenges the trial court's finding that termination of her parental rights was in CAG's best interests. Again, we conclude that the trial court did not err.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of the parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). When considering whether termination of parental rights is in a child's best interests, a court may consider a variety of factors. *In re White*, 303 Mich App at 713. These factors include the bond between the child and the parent, the parent's ability to parent the child, the child's need for permanency and stability, the advantages of a foster home over the parent's home, the parent's compliance with the case service plan, the parent's visitation history with the child, the child's well-being, and the possibility of adoption. *Id.* at 713-714. In addition, the trial court should consider the child's safety and well-being, including the risk of harm a child might face if returned to the parent's care. See *In re VanDalen*, 293 Mich App at 142. The court may also consider psychological evaluations, the child's age, continued involvement in domestic violence, and a parent's history. *In re Jones*, 286 Mich App 126, 131; 777 NW2d 728 (2009).

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. The court's focus must be on the child and not the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). Whether termination of parental rights is in a child's best interests must be proven by a preponderance of the evidence. *Id*. at 90. This Court reviews for clear error a trial court's finding that termination of parental rights is in a child's best interests. *In re Jones*, 286 Mich App at 129.

CAG was four months old when she was removed from respondent's care and placed in a licensed foster home. She remained in that home for the next four years, and it cannot be seriously disputed that this home was the only home that CAG had ever really known. CAG was doing well in the foster home and her foster parent was ensuring that all of CAG's needs were being met. There was testimony from at least two witnesses that a bond existed between CAG and her foster parent. Further, her foster parent wished to adopt CAG in the event that the court terminated respondent's parental rights.

By contrast, a preponderance of the evidence suggested that respondent's substance abuse and lack of commitment to her child posed a threat to CAG's emotional and physical well-being. Respondent was unwilling or unable to make meaningful changes to establish the stability necessary to properly parent CAG and provide her with a safe and stable home environment. When considering a child's best interests, the court may consider the advantages of a foster home over the parent's home. *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012). Further, the trial court may consider the possibility of adoption. *In re White*, 303 Mich App at 713. In this case, a preponderance of the evidence supports a finding that CAG's foster home was preferable

to respondent's home because it would provide CAG with the care she required to facilitate her continued growth and development.

The court also considered CAG's need for permanency. CAG had been a ward of the court for more than four years. The instability caused by respondent's failure to make meaningful changes in her life would eventually take its toll on the child. CAG was fast approaching the age where visits with respondent would cause more confusion than comfort. The termination of respondent's parental rights would give CAG an opportunity to benefit from the stability and permanence her foster parent was willing and able to provide.

There was very little evidence that a bond existed between respondent and CAG. Throughout the four years CAG was a court ward, respondent's attendance at parenting time was inconsistent. In the six months that preceded the court's termination of parental rights, respondent did not visit CAG at all. The foster parent testified that respondent's visits were so inconsistent that CAG did not even notice if they did not occur. CAG never asked or talked about respondent. To the extent that any bond existed between respondent and CAG, it was weak. Accordingly, the existence of a bond was not a factor that weighed in favor of preserving respondent's parental rights.

It is apparent from the record that the trial court properly considered appropriate factors when contemplating CAG's best interests. A preponderance of the evidence weighed in favor of terminating respondent's parental rights. Accordingly, the trial court did not clearly err.

Affirmed.

/s/ Michael F. Gadola
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly